IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00376-KLM

MICHAEL Y. BIRMAN,

      Plaintiff,

v.

D. BERKEBILE, Warden,
MR. KIANG, ADX Pharmacist "LT" Commander, and
MR. CORDOVA, Health Service Supervisor,

      Defendants.

_____

## ORDER
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

      This matter is before the Court on Plaintiff's **Motion to Amend Civil Rights Complaint** [#41][1] (the "Motion"). Defendants filed a Response [#43] in opposition to the Motion [#41], and Plaintiff, who proceeds in this matter as a pro se litigant,[2] filed a Reply [#46]. The Court has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#41] is **GRANTED in part and DENIED in part**.

_____

    [1]  "[#41]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

    [2] The Court must construe the filings of a pro se litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall*, 935 F.2d at 1110. The Court, however, should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

# I.  Background

Plaintiff is presently incarcerated at the Federal Bureau of Prisons ("BOP") in Florence, Colorado.   The initial Complaint [#1] asserted *Bivens*[3] claims against three individuals: (1) Defendant D. Berkebile ("Berkebile"), the warden of Plaintiff's prison facility, (2) Defendant Kiang, a pharmacist at Plaintiff's prison facility, and (3) Defendant Cordova, a supervisor at the Health and Medical Service Department at Plaintiff's prison facility. Plaintiff seeks to add three additional Defendants in his Proposed Amended Complaint [#41-1]: (1) D. Allred ("Dr. Allred"), the Clinical Director of the Health and Medical Service Department at Plaintiff's prison facility, (2) C. Samuels ("Director Samuels"), the Central Director of the BOP, and (3) the BOP itself.   Plaintiff asserts constitutional claims against each Defendant and proposed defendant for violations of his First, Fifth, Sixth, and Eighth Amendment rights.   *Proposed Am. Compl.* [#41-1] at 5-10.   Plaintiff seeks monetary damages from the individuals (who are sued only in their individual capacities) and declaratory and injunctive relief from the BOP.[4]  *Id.* at 4, 8.

In short, Plaintiff brings this lawsuit to compel Defendants to provide adequate medical treatment for his hepatitis C condition.  *Id.* at 4-5.  Hepatitis C "is a degenerative liver malady that when untreated is a 'death sentence'".  *Id.* at 6.  Plaintiff asserts that the

---

[3]  In *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the United States Supreme Court recognized a cause of action for money damages and injunctive relief against federal officials acting under color of their authority for violations of an individual's constitutional rights, 403 U.S. at 395-97.  *Bivens* only authorizes suit against federal officials in their individual capacities.  *Smith v. United States*, 561 F.3d 1090, 1093 (10th Cir. 2009).

[4]  To the extent that Defendants argue under Fed. R. Civ. P. 12(b)(1) that Plaintiff may not obtain money damages from the BOP as an agency of the United States, this argument is moot as Plaintiff clearly states he is only seeking declaratory and injunctive relief from the BOP.  *See Response* [#43] at 9; *Proposed Am. Compl.* [#41-1] at 4.

routinely-prescribed medication for this condition is called "interferon B," "which is [a] tried and true medicine that not only reverses hepatitis degeneration but in fact cures it when routinely administered over a regimented course of treatment." *Id.* at 5. Before his transfer into federal custody, Plaintiff was taking interferon B, but his treatment was terminated by a physician of Arab descent, which Plaintiff asserts was done on the basis of his religion (Jewish) and nationality (Israeli). *Id.* at 9. Plaintiff asserts that Defendants continue to deny him this medication "despite his progressive health deterioration and ongoing severe liver pain and oral hemorrhaging of blood . . . ." *Id.* at 5-6.

Plaintiff asserts that Defendant Berkebile was notified "verbally, in writing via request, and by administrative remedy complaint and by letters from the Israeli Consulate General in Los Angeles, California" of Plaintiff's condition and need for medical treatment, but he refuses to order his subordinates to provide Plaintiff with medication. *Id.* Plaintiff asserts that Defendant Cordova "has a professional duty to provide Plaintiff with necessary medical treatment that will avert pain and suffering as well as the traumatic and emotional effects of being afflicted with hepatitis disease" but despite his knowledge of Plaintiff's condition and authority to order treatment, he refuses to provide medication for Plaintiff. *Id.* at 6-7. Plaintiff's allegations regarding Dr. Allred, Director Samuels, and Defendant Kiang are similar, i.e., that Plaintiff apprised each of them of his condition, each has the power to order his medication, and each refuses to do so. *See id.* at 7-8.

## II. Standard of Review

### A. Fed. R. Civ. P. 15(a)

As a preliminary matter, a Scheduling Conference has not yet been held, and no pleading amendment deadline has yet been set. Therefore, Plaintiff's request to amend

-3-

is timely.  The Court thus considers any arguments raised by the parties related to whether justice would be served by amendment.  Specifically, the Court should grant leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be given, however, when the moving party unduly delayed, failed to amend despite ample opportunity to do so, the nonmoving party would be unduly prejudiced, or amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Potential prejudice to a defendant is the most important factor in considering whether a plaintiff should be permitted to amend its complaint.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).  "Courts typically find prejudice only when the [proposed] amendment unfairly affects the defendants in terms of preparing their defense to [claims asserted in the] amendment."  *Id.* (quotation omitted).  "Although leave to amend is to be freely granted, the liberal amendment principles of Rule 15(a) do not require the court to indulge in futile gestures. Leave to amend need not be granted where the amendments would serve no purpose."  *Zerman v. E.F. Hutton & Co., Inc.*, 628 F. Supp. 1509, 1511 (S.D.N.Y.1986) (citing *Foman*, 371 U.S. 178).

Defendants assert that Plaintiff's request should be denied on the basis of futility. *Response* [#43] at 4.  An amendment is futile if it would not survive a motion to dismiss. *Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2010 WL 148285, at *2 (D. Colo. Jan. 8, 2010) (citing *Bradley v. Val–Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). Accordingly, the Court must examine Plaintiff's Proposed Amended Complaint [#41-1] applying the standards of Fed. R. Civ. P. 12(b)(6) to determine if amendment is futile.

## B.    Fed. R. Civ. P. 12(b)(6)

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four

corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary[. Instead,] the statement need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a

reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

As an additional preliminary matter, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d 266, 268-70 (4th Cir. 1994).

### III.  Analysis[5]

#### A.    BOP

To the extent that Defendants argue that the claims against the BOP in the Proposed Amended Complaint are redundant because Plaintiff asserts claims against the individual Defendants in their official capacities in the initial Complaint, the Court notes that Plaintiff's claims in the Proposed Amended Complaint are made against Defendants in only their individual capacities, thus adding the BOP as a Defendant in the Proposed Amended

---

[5]  The Court notes at the outset that Plaintiff, although pro se, does not proceed in forma pauperis. *See* [#9]. Accordingly, the Court does not independently examine Plaintiff's claims pursuant to 28 U.S.C. § 1915(e)(2) to determine whether Plaintiff fails to state a claim on which relief may be granted.

Complaint is not redundant.  *Response* [#43] at 10.

Defendants assert no other argument against adding the BOP as a party to this lawsuit.  Accordingly, the Motion [#41] is **granted** to the extent Plaintiff seeks to add the BOP in order to obtain declaratory and injunctive relief.  *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1238-39 (10th Cir. 2005) (holding that non-monetary remedies against the BOP are available to an inmate plaintiff).

**B.    Director Samuels**

Defendants argue that the Court lacks personal jurisdiction over Director Samuels.  *Response* [#43] at 8-9.  "It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."  *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003).   To the extent Director Samuels may have received grievances or other correspondence from Plaintiff regarding Plaintiff's medical condition, this is not sufficient to establish personal jurisdiction over him.  *Nichols v. Fed. Bureau of Prisons*, No. 09-cv-00558-CMA-CBS, 2010 WL 3219998, at *3 (D. Colo. Aug. 12, 2010) (citing *Hill*, 75 F. App'x at 719; *Georgacarakos v. Wiley*, No. 07-cv-01712, 2008 WL 4216265, at *5 (D. Colo. Sept. 12, 2008) (finding that personal jurisdiction did not arise simply because the director of the BOP received notice of allegedly unconstitutional conditions).

Plaintiff's allegations against Director Samuels are sparse.  Plaintiff does not allege that Director Samuels conducted any activities in Colorado or had any contact with Plaintiff in Colorado.  Plaintiff does not allege that Director Samuels gave direction to any of the other Defendants in any way that impacted Plaintiff.  Thus, any actions Director Samuels

may or may not have taken, even when combined with his alleged knowledge of Plaintiff's medical condition based on Plaintiff's grievances and/or correspondence, are insufficient to establish personal jurisdiction. *See Nichols*, 2010 WL 3219998, at *4 (holding the same on similar facts).

Accordingly,  the Motion [#41] is **denied** to the extent Plaintiff seeks to add Director Samuels as a defendant to this lawsuit.

## C.    Dr. Allred and Defendants Berkebile, Cordova, and Kiang

The constitutional claims asserted against Proposed Defendant Dr. Allred and current Defendants Berkebile, Cordova, and Kiang may be discussed together.

### 1.    Sixth Amendment

The Sixth Amendment provides a number of guarantees regarding criminal trials, including the right to a speedy and public trial by an impartial jury, the right to confront witnesses, and the right to the assistance of counsel. U.S. Const. amend. VI.  Plaintiff does not allege any defects in connection with a criminal trial, and, to the extent he may be vaguely asserting that he is somehow being punished by prison officials, prison disciplinary proceedings are not considered to be criminal prosecutions. *See Pollard v. Soares*, No. 09-cv-00106-REB-KLM, 2010 WL 582370, at *13 (D. Colo. Feb. 18, 2010) (citing *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994)).  Thus, Plaintiff does not allege a Sixth Amendment violation.  Accordingly, the Motion [#41] is **denied** to the extent Plaintiff seeks to add a Sixth Amendment claim to this lawsuit.

### 2.    First Amendment and Fifth Amendment

Plaintiff asserts a First Amendment claim and a Fifth Amendment claim.  However,

the First Amendment claim is for all intents and purposes redundant of the Fifth Amendment claim.

Plaintiff's First Amendment retaliation claim appears to assert that Defendants have refused to provide necessary medical treatment on the basis of Plaintiff's Jewish faith and Israeli citizenship. *Proposed Am. Compl.* [#41-1] at 10. "The First Amendment protects the freedom of religious groups to engage in certain key religious activities, including the conducting of worship services and other religious ceremonies and rituals, as well as the critical process of communicating the faith." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 132 S.Ct. 694, 711-712 (2012) (Alito, J., concurring). The First Amendment also protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). In short, the First Amendment protects conduct associated with religious freedom, but Plaintiff does not assert that he has previously engaged in or continues to engage in any particular conduct which has led to retaliation by Defendants. Rather, his claim appears to be based solely on the allegations that he is an Israeli citizen and that he believes in the Jewish faith. *See Proposed Am. Compl.* [#41-1] at 10. Thus, Plaintiff appears to be attempting to make an equal protection claim, and the Court construes it as such, because the Court appropriately disregards the legal labels applied by a pro se plaintiff when those labels serve to obfuscate the nature of the legal claims asserted. *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a pro se party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").

"The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013). "The Fifth Amendment's Due Process Clause and the Fourteenth Amendment's Equal Protection Clause provide generally the same equal protection to individuals against federal and state government interference, respectively." *United States v. Titley*, 770 F.3d 1357, 1359 n.1 (10th Cir. 2014). Defendants' only argument against a Fifth Amendment claim is that it is essentially a restatement of Plaintiff's Eighth Amendment claim (which the Court discusses below). *Response* [#43] at 6 (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Court disagrees with this characterization. Plaintiff's Fifth Amendment claim (both on its own and as described under the First Amendment heading) clearly describes an equal protection claim that asserts not deliberate indifference to his medical needs, but rather deliberate withholding of medication for discriminatory purposes. While the claims are certainly related, the Court does not view these as identical claims. Defendants do not raise any other argument with respect to Plaintiff's Fifth Amendment equal protection claim.

Accordingly, the Motion [#41] is **granted** to the extent that Plaintiff seeks to assert a Fifth Amendment claim against Dr. Allred and Defendants Berkebile, Cordova, and Kiang. The Motion [#41] is **denied** to the extent that Plaintiff seeks to assert a First Amendment claim against Dr. Allred and Defendants Berkebile, Cordova, and Kiang.

### 3.    Eighth Amendment[6]

---

[6] Defendants assert qualified immunity with respect to this claim alone. Normally, when defendants raise qualified immunity, the Court employs a two-step process. One part of the inquiry relates to whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "[I]f a violation could be made

The Eighth Amendment to the United States Constitution provides that "cruel and unusual punishments" shall not be inflicted. U.S. Const. amend. VIII. Punishments which "involve the unnecessary and wanton infliction of pain" violate this provision. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Because "[a]n inmate must rely on prison authorities to treat his medical needs," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), the Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment," *id.* at 104 (quoting *Gregg*, 428 U.S. at 173).

Defendants argue that the claim against Defendant Berkebile, the warden, fails based on lack of personal participation. Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). To establish personal participation, a plaintiff must show that each defendant caused the deprivation of a federal right. *See Graham*, 473 U.S. at 166. A supervisory official may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Iqbal*, 556 U.S. at 676. Therefore, in order to succeed in a § 1983 suit against a government official for conduct that arises out of his or her supervisory responsibilities, a plaintiff must allege and demonstrate that: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation

out on a favorable view of the parties' submissions, the next . . . step is to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201. Here, although Defendants raise qualified immunity, they only present argument regarding the first step of the analysis, i.e., whether a constitutional violation has been properly alleged. In light of Defendants' failure to argue the issue and the fact that Plaintiff does not proceed in forma pauperis, *see supra* n.5, the Court does not reach the second stop of the analysis. *See In re C.W. Mining Co.*, 740 F.3d 548, 564 (10th Cir. 2014) ("Arguments raised in a perfunctory manner . . . are waived.").

of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Richardson, 614 F.3d at 1199. The Tenth Circuit has recently reiterated that "personal participation in a violation of a plaintiff's constitutional rights is an essential allegation in a Section 1983 claim," and that "denial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation." *Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013) (citations omitted) (holding that the district court properly dismissed plaintiff's claims against individual defendants charged in their supervisory capacities); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Simple awareness of a prisoner's complaints of health concerns does not constitute personal participation in the deprivation of a constitutional right. *E.g.*, *Quintana v. Doe*, No. 09-00946, 2010 WL 2650052, at *7 (D. Colo. June 30, 2010). Here, Plaintiff does not allege facts supporting a contention that Defendant Berkebile was personally involved in directing the allegedly unconstitutional conduct at issue in this case. *See Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). The allegations stated by Plaintiff are thus too tenuous to establish the requisite personal participation on the part of Defendant Berkebile, and Plaintiff has failed to "[nudge his claim] across the line from conceivable to plausible." *Twombly*, 550 U .S. at 569.

Turning to the merits of the claim with respect to Dr. Allred and Defendants Cordova and Kiang, the test for deliberate indifference is both objective and subjective. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). Plaintiff must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," *Farmer v. Brennan*,

511 U.S. 825, 834 (1994), and that (2) Defendants subjectively knew of and disregarded "an excessive risk to [the prisoner's] health or safety," *id.* at 837.   Importantly, "it is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).   Thus, "a mere difference of opinion between the prison's medical staff and the inmate as to the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).   Further, a prisoner does not have a valid claim of deliberate indifference simply because he was denied "a particular course of treatment" that he desired. *Callahan*, 471 F.3d at 1160.   "[A] prison doctor remains free to exercise his or her independent professional judgment," *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997), and "[m]edical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview," *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (quoting *Estelle*, 429 U.S. at 107).

The objective component of the test is met if the "harm suffered rises to a level 'sufficiently serious' to be cognizable under the Cruel and Unusual Punishment Clause" of the Eighth Amendment. *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).   A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)).

When evaluating the subjective prong of the deliberate indifference test, the Court considers whether Defendants intended a deprivation of medical care, *i.e.*, acted with deliberate indifference to the harm that could result from a deprivation. *See Farmer*, 511 U.S. at 837. Plaintiff must show that Defendants "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety" or acted with a sufficiently culpable state of mind. *See id.* A defendant knew of and disregarded an excessive risk to a prisoner's health or safety when he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" *and* actually drew that inference. *Id.* The subjective component also requires that the prison official disregard the specific risk of harm claimed by the prisoner, not just a general risk of harm. *Martinez v. Beggs*, 563 F.3d 1082, 1089-90 (10th Cir. 2009) (citing *Estate of Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994) (holding that plaintiffs were required to show defendants were deliberately indifferent to prisoner's specific risk of suicide, his ultimate cause of death, not merely the risks of intoxication, the symptoms prisoner exhibited)).

"Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is preferable to another, are beyond the [Eighth] Amendment's purview." *Snipes*, 95 F.3d at 591 (citation omitted). As such, an inmate's difference of opinion concerning the medical treatment that he receives does not generally support a claim for cruel and unusual punishment. *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993). A "prisoner's right is to medical care—not to the type or scope of medical care which he personally desires." *Henderson v. Sec'y of Corr.*, 518 F.2d 694, 695 (10th Cir. 1975) (citation omitted). While a plaintiff's disagreement with the course of treatment employed by prison medical staff may "amount[ ] to a medical malpractice

-14-

claim cognizable in state court . . . a medical malpractice claim does not become a constitutional violation simply because the plaintiff is a prisoner." *Pearson v. Simmons*, No. 95-3006, 1998 WL 154552, at *2 (D. Kan. Mar. 17, 1998) (citations omitted).

Plaintiff alleges that hepatitis c "is a degenerative liver malady that when untreated is a 'death sentence'". *Proposed Am. Compl.* [#41-1] at 6.  He further asserts that before his transfer into federal custody, Plaintiff was taking interferon B, but his treatment was terminated for reasons allegedly unrelated to his medical status.  *Id.* at 9.  Plaintiff asserts that Defendants continue to deny him this medication "despite his progressive health deterioration and ongoing severe liver pain and oral hemorrhaging of blood . . . ."  *Id.* at 5-6. These facts allege a sufficiently serious condition for the purposes of a deliberate indifference claim.  Plaintiff does not allege that he is receiving any alternative treatment. He asserts that Defendant Cordova, Kiang, and Allred are all medical professionals who are aware of his condition and each has the power to provide him with his medication, but each refuses to do so.  *See id.* at 6-8.

Although the allegations are sparse, the Court finds that Plaintiff has met his burden to allege an Eighth Amendment claim at this early stage of the case.  "Specific facts are not necessary[.  Instead,] the statement need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests[, and is not required to] include all facts necessary to carry the plaintiff's burden."  *Khalik*, 671 F.3d at 1192.  Plaintiff has done so here.  To the extent that Defendants argue that an  inmate's difference of opinion concerning his medical treatment does not generally support a claim for cruel and unusual punishment, *see Olson*, 9 F.3d at 1477, the Court notes that there are no allegations that Plaintiff is receiving any treatment whatsoever for his condition, although discovery may of

course later reveal otherwise.

Defendants argue that *Free v. Unknown Offices of Bureau of Prisons*, 103 F. App'x 334, 336-37 (10th Cir. 2004), demonstrates that Plaintiff's claim here is futile, because in that case the Tenth Circuit affirmed the dismissal of a claim where the prisoner had argued that the BOP's decision not to treat him for HCV constituted a violation of the Eighth Amendment. *Response* [#43] at 5. However, the Court there relied on information showing that the plaintiff was ineligible for the combination drug therapy until his enzymes reached critical levels, and that this policy was based on recommendations from the National Institute of Health. *Free*, 103 F. App'x at 336. No such or similar information is before the Court on this Motion, and the Court therefore declines to be persuaded by *Free* on the current record.

Accordingly, the Motion [#41] is **granted** to the extent Plaintiff seeks to retain Defendants Kiang and Cordova and add Dr. Allred as a defendant in connection with Plaintiff's Eighth Amendment claim. The Motion [#41] is **denied** to the extent Plaintiff seeks to assert an Eighth Amendment claim against Defendant Berkebile.

### IV. Conclusion

Accordingly, for the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#41] is **GRANTED in part**. Plaintiff's Proposed Amended Complaint [#41-1] is accepted for filing to the extent it asserts (1) an Eighth Amendment claim seeking monetary damages against Dr. Allred and Defendants Kiang and Cordova in their individual capacities, (2) a Fifth Amendment claim seeking monetary damages against Dr. Allred and Defendants Kiang, Cordova, Berkebile, and (3)

First, Fifth, Sixth, and Eighth Amendment claims against the BOP seeking injunctive and declaratory relief.

Service has previously been effected on Defendants Kiang, Cordova, and Berkebile. Accordingly,

IT IS HEREBY **ORDERED** that, if appropriate, the Clerk shall attempt to obtain a waiver of service from Dr. Allred and the BOP.  If unable to do so, the United States Marshal shall serve a copy of the Amended Complaint, summons, and this Order on Dr. Allred and the BOP.  All costs of service shall be advanced by the United States.

IT IS FURTHER **ORDERED** that Dr. Allred and the BOP shall respond to the Amended Complaint as provided for in the Federal Rules of Civil Procedure after service of process on them.

Dated September 3, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge